Filed 9/11/15  Pasternack v. Fagel CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| LAWRENCE PASTERNACK, | |
| Plaintiff and Appellant, | E060349 |
| v. | (Super.Ct.No. INC1206949) |
| BRUCE FAGEL, as Trustee, etc. et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  David M. Chapman, Judge.  Affirmed.

Rutan & Tucker, Milford W. Dahl, Jr., Lisa N. Neal, and Proud Usahacharoenporn, for Plaintiff and Appellant.

Nethery/Mueller/Olivier and Martin A. Mueller for Defendants and Respondents.

This appeal arises out of a dispute between the owners of adjacent properties. Plaintiff and appellant Lawrence Pasternack (plaintiff) objects to the construction plans of defendants and respondents Bruce Fagel and Trudy Fagel, in their capacity as trustees of the Fagel Family Trust (defendants).  He contends that defendants' improvements to

1

their property are in violation of the applicable Covenants, Conditions and Restrictions (CC&R's)—specifically, provisions regarding setbacks, that is, the minimum distance between the improvements and the property line.[1] His initial complaint sought declaratory and injunctive relief; the most recent amended complaint filed in the action, the third amended complaint (TAC), seeks monetary damages. The trial court sustained without leave to amend defendants' demurrer to the TAC. Plaintiff appeals from the judgment, as well as the trial court's award of attorney fees to defendants as the prevailing parties. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

The properties at issue are located in a development known as the Canyons at Bighorn, located in the City of Palm Desert. Plaintiff purchased his property in November 2006; defendants purchased the adjacent property, though when precisely is not alleged in the TAC. Both properties are subject to CC&R's regulating, among other things, the location of any improvements—plaintiff attached a copy of the CC&R's as an exhibit to the TAC. The CC&R's also incorporate by reference a separate document, entitled "Architectural and Landscape Design Guidelines" (design guidelines), also attached as an exhibit to the TAC.

As relevant to the present appeal, the CC&R's provide that "[e]ach Owner shall promptly comply with all laws, statutes, ordinances, rules and regulations of Federal,

---

[1] Plaintiff's pleadings make reference to additional purported violations of the CC&R's, relating to maximum building coverage and location of second-story windows. On appeal, however, plaintiff's briefing makes no mention of these allegations, so they require no further discussion in this opinion.

2

State or municipal governments or authorities applicable to . . . construction and maintenance of such Owner's Lot and any Improvements." The CC&R's specify that "Lots shall be subject to the setback restrictions required by local City ordinances and regulations and in addition, Lots shall be subject to setback and other restrictions on Improvement location imposed by the [Architectural and Landscaping Control] Committee." The design guidelines describe "building envelopes" established for each property, within which any improvements, with limited exceptions, must be located. Nevertheless, the design guidelines also specifically recognize that "each Homesite presents its own unique design challenges and Owners, along with their Architects, may develop design solutions involving encroachments outside of the [building envelope]." Proposals for improvements that encroach outside the building envelope—and thus closer to the neighboring property line—may be approved, after evaluation "for continuity with the adjoining Homesites and/or the goals of [the] Design Guidelines," and such decisions "shall be made solely at the discretion of the [Architectural and Landscaping Control] Committee." Similarly, the CC&R's themselves provide that "[a]ll action by the [Architectural and Landscaping Control] Committee authorized in this Declaration shall be within its sole discretion."

In June 2011, the Architectural and Landscaping Control Committee approved defendants' plans for building on their property, even though the design called for improvements encroaching outside the building envelope. The City of Palm Desert also gave defendants its approval to go forward with construction.

3

Plaintiff alleges that after construction commenced on defendants' property he "noticed that wooden forms for [defendants'] future footings and foundations were placed 6 - 8 feet from [plaintiff's] lot," which he believed to be a violation of the "applicable setback requirements" for sideyards. Plaintiff's allegations rest specifically on his interpretation of a tentative tract map[2] he attached as an exhibit to the TAC, which requires, according to plaintiff, that defendants' improvements allow for "minimum" of 10 feet of sideyard setback, but arguably 12 feet. The properties at issue became subject to the setback requirements shown on the tentative tract map by virtue of the June 26, 1997 resolution by the City Council of the City of Palm Desert approving it, as contemplated by the Subdivision Map Act. (See Gov. Code, § 66410 et seq.)

Plaintiff filed suit on October 2, 2012, seeking declaratory relief and an injunction, and suing not only the present defendants, but also the Bighorn Homeowners Association and the City of Palm Desert. On November 20, 2012, the trial court granted plaintiff a preliminary injunction halting construction on defendants' property.

On January 24, 2013, the City Council of the City of Palm Desert adopted a resolution "approving a development plan for the portion of the Canyons at Bighorn project . . . ." (Bolding and capitalization omitted.) The resolution recites that its

---

[2] The document's complete title is "Revised Vesting Tentative Tract Map No. 25296 and Precise Plan." Plaintiff attached only a single page of the seven-page document to the TAC, but a complete copy appears in our record as part of the documentation submitted by defendants in opposition to plaintiff's motion for a preliminary injunction, and is properly considered on demurrer. (See *City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 800 ["Where written documents are the foundation of an action and are attached to the complaint and incorporated therein by reference, they become a part of the complaint and may be considered on demurrer."].)

4

purpose is, among other things, "to avoid any potential confusion that may exist regarding approval of structures," and to "confirm that individual structures approved for development . . . pursuant to and in conformance with an approved site plan and a City-issued building permit are and have been consistent with the spirit and intent of the City's Municipal Code." Among other things, the resolution sets "minimum yard development standards"—that is, setback requirements—for sideyards to five feet for all habitable structures within the development. It further provides that "[i]n the event that different or conflicting development standards are stated in any tentative or final subdivision map for the plan area or in any other provision of law, the provisions of this Development Plan shall supersede such standards and control." The resolution is also explicitly intended to have retroactive effect, providing that any structure within the Canyons at Bighorn for which a grading or building permit had previously been issued "shall be deemed to be consistent and in conformance with this Development Plan."

On March 26, 2013, at defendants' request and over plaintiff's opposition, the trial court entered an order dissolving the preliminary injunction. On April 22, 2013, plaintiff entered into a settlement agreement with respect to some of his claims in the present lawsuit, as well as several other actions, pursuant to which the Bighorn Homeowners Association and the City of Palm Desert were subsequently dismissed from the case. As a provision of the settlement agreement, plaintiff transferred ownership of his property back to the developer (an entity not party to this case), in exchange for a cash payment.

Plaintiff's most recent amended complaint, the TAC, was filed on August 29, 2013. The TAC asserts a single cause of action, sounding in contract, alleging that

5

defendants breached a contractual duty to him under the CC&R's and incorporated documents to abide by the setback requirements in effect as of the time defendants and plaintiff bought their respective properties, and regardless of any later changes in those provisions by the City of Palm Desert. Defendants' demurrer to the TAC came on for hearing on October 30, 2013; the trial court sustained the demurrer without leave to amend.[3]

Defendants subsequently requested an award of attorney fees and costs in the amount of $127,998.32, as the prevailing party, pursuant to former Civil Code section 1354. The trial court granted defendants fees and costs in the amount of $89,387.50, an amount representing only those fees and costs incurred after the passage of the January 24, 2013 resolution.

## II. DISCUSSION

**A. Defendants' Demurrer Was Properly Sustained Without Leave to Amend.**

*1. Standard of Review*

"We review de novo the trial court's rulings sustaining a defendant's demurrer without leave to amend. [Citation] "'[W]e give the complaint a reasonable interpretation, and treat the demurrer as admitting all material facts properly pleaded, but not the truth of contentions, deductions or conclusions of law. We reverse if the plaintiff has stated a cause of action under any legal theory. [Citation.]" [Citation.]"' (*H.N. &*

---

[3] Although the trial court's minute order states that the dismissal of the TAC is "without prejudice," the transcript of the hearing, as well as the court's signed judgment, demonstrate that this is a scrivener's error.

*Frances C. Berger Foundation v. Perez* (2013) 218 Cal.App.4th 37, 42-43 [Fourth Dist., Div. Two].)

  2. *Analysis*

  Two fundamental premises underlying the claim plaintiff asserts in the TAC and continues to press on appeal are the following: (1) the improvements on defendants' property violate the setback requirements in place prior to the City of Palm Desert's January 24, 2013 resolution; and (2) defendants had a contractual duty under the CC&R's to abide by the setback requirements effective prior to the January 24, 2013 resolution, even after that date. The first premise is at least questionable, but in any case we find the second premise to be false. As such, the trial court's ruling, sustaining defendants' demurrer to the TAC without leave to amend, was correct.

  Plaintiff's arguments regarding what setback requirement applies to defendants' property derive from the tentative tract map, and specifically a chart labeled "Development Standards," which he copied into the TAC, in addition to attaching the page it was from as an exhibit. The leftmost column in this chart is titled "Lot Type," with lot types 1 through 8 arranged vertically below the title. The remaining columns, with an entry for each lot type, are entitled "Minimum Width," "Minimum Depth," "Minimum Frontyard Setback," "Minimum Sideyard Setback," "Minimum Rearyard Setback," and "Maximum Building Height." On plaintiff's reading of this chart, lot type

7

is determined by the size of the lot, and defendants' lot is either lot type 1 or type 2, yielding a minimum sideyard setback of either 12 feet or 10 feet, respectively.[4]

On its face, however, plaintiff's interpretation of how lot types are determined is implausible. Among other things, it is impossible to determine lot type based on lot size alone using the "Development Standards" chart, because several of the lot types have identical minimum widths and depths.[5] Moreover, on the same page of the tentative tract map as the "Development Standards" table is another chart, entitled "Lot and Grading Summary," correlating lot *numbers* with lot type, with reference to maps on separate pages identifying by number each lot in the development. The only reasonable conclusion is that lots of a given type must be of a certain minimum size, as indicated in the "Development Standards" chart, but it is not the lot size alone that determines lot type.

Nevertheless, the determination of what lot type defendants' property should be considered is not entirely straightforward. As the tentative tract map indicates, final lot lines vary from the tentative lot lines. Moreover, lots were renumbered in the final lot map. Thus, the TAC alleges, and defendants have not disputed, that defendants' property corresponds with lot 9 on the final tract map. In briefing regarding plaintiff's request for

---

[4] According to the TAC, defendants' lot has a depth of 179-185 feet, and a width of 135-145 feet. The minimum width set by the revised tentative tract map for lot type 1 is 150 feet; lot type 2—120 feet. The minimum depth of lot type 1 is 180 feet; lot type 2—150 feet.

[5] Lot types 6 and 8 both have minimum widths of 50 feet and minimum depths of 150 feet. Lot types 5 and 7 both have minimum widths of 60 feet and minimum depths of 150 feet.

8

a preliminary injunction, however, the parties disputed what lot on the tentative tract map corresponds to the final tract map's lot 9. Defendants identified lot 178 as the corresponding lot. Lot 178 is listed as lot type 4 in the "Lot and Grading Summary" chart of the tentative tract map, which would give it a minimum sideyard setback of five feet according to the "Development Standards" chart—a standard with which defendants' improvements to their property (as described in the TAC) would comply. Plaintiff, however, submitted expert declarations opining that defendants' property could not possibly correspond to lot 178 on the tentative tract map. This dispute is not one we can resolve at the pleadings stage.

We can, however, resolve the issue of whether defendants' improvements comply with the setback requirements set by the City of Palm Desert's January 24, 2013 resolution; they do. The standard set in that resolution applies to all habitable structures in the development, explicitly superseding any "different or conflicting development standards . . . stated in any tentative or final subdivision map for the plan area or in any other provision of law," rendering irrelevant the parties' dispute about lot type. The TAC alleges the improvements are six to eight feet from the property line; the January 2013 resolution sets a sideyard setback requirement of five feet. Moreover, the resolution is expressly intended to have retroactive effect, such that any previously approved structure is "deemed to be consistent and in conformance" with the standards stated in the January 2013 resolution. There is no question, therefore, that defendants' improvements to their property are in compliance with the applicable City of Palm Desert ordinances and regulations currently in place.

9

The question then becomes whether, regardless of defendants' compliance with present City of Palm Desert ordinances and regulations, they also have a contractual duty under the CC&R's to continue to adhere to the ordinances and regulations in effect "at the time they purchased their property and began building their residence," as plaintiff contends. We answer this question in the negative. "'When persons enter into a contract or transaction creating a relationship infused with a substantial public interest, subject to plenary control by the state, such contract or transaction is deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy . . . .'" (*Doe v. Harris* (2013) 57 Cal.4th 64, 70 (*Doe*).) The CC&R's, which are in essence a contractual supplement to state and municipal zoning laws, are such a contract; the power to make and to modify zoning regulations is a matter of substantial public interest, subject to "plenary control" by the state or, in this case, municipality. (See, e.g., *Case v. City of Los Angeles* (1956) 142 Cal.App.2d 66, 69 ["The city in the exercise of its police power has the right to modify its zoning regulations from time to time."].) Given the absence of any explicit language to the contrary, therefore, the CC&R's are properly deemed to incorporate and contemplate not only the municipal setback requirements in effect when plaintiff and defendants became party to them, but also any subsequent changes to those requirements.

Plaintiff's reliance on *Swenson v. File* (1970) 3 Cal.3d 389 (*Swenson*) in support of a contrary conclusion is misplaced. *Swenson* involved a covenant not to compete that exceeded the geographic scope then permitted by Business and Professions Code section

10

16602 and was therefore unenforceable to the extent it exceeded statutory limitations. (*Swenson*, *supra*, at pp. 392-394.) The Supreme Court rejected the plaintiff's argument that the scope of the covenant not to compete in the parties' agreement expanded when section 16602 was later amended to increase the permissible scope of such covenants. (*Swenson*, *supra*, at p. 393.) *Swenson*, however, unlike the present case, did not involve a contract "creating a relationship infused with a substantial public interest," and did not involve a change in law intended to apply retroactively. (*Doe*, *supra*, 57 Cal.4th at p. 70 [distinguishing *Swenson* on this basis].) As such, though *Swenson* reflects California law, it does not apply to the facts of the present case.

In short, plaintiff's only asserted claim depends on the premise that defendants are contractually bound, under the CC&R's, to abide by the setback requirements effective prior to the January 24, 2013 resolution, even after that date. This premise is false, as a matter of law, and plaintiff has made no showing that he could amend to cure this fatal pleading defect. Defendants' demurrer to the TAC was therefore properly sustained without leave to amend.

## B. Plaintiff Has Shown No Abuse of Discretion Regarding Award of Attorney Fees

### 1. Standard of Review

We review a trial court's determination of reasonable attorney fees under the abuse of discretion standard: "[T]here is no question our review must be highly deferential to the views of the trial court. [Citation.] As our high court has repeatedly stated, ""[t]he "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his judgment is of course subject to

11

review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion.'"'" [Citations.]" (*Children's Hospital & Medical Center v. Bonta´* (2002) 97 Cal.App.4th 740, 777.) However, we review "[t]he legal basis for an award of attorney fees . . . de novo." (*Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1511.)

Here, the legal basis for the award of attorney fees was former Civil Code section 1354, now Civil Code section 5975, which provides that in an action to enforce the governing documents of a common interest development, such as the CC&R's at issue in this case, "the prevailing party shall be awarded reasonable attorney's fees and costs."[6] There is no rigid definition of the term "prevailing party" under this statute; rather, "the trial court must determine who is the prevailing party" based on "which party had prevailed on a practical level." (*Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1571, 1574.)

*2. Analysis*

Plaintiff contends that defendants should not be considered the prevailing party based on the circumstance that they obtained dismissal of the TAC without leave to amend only after an intervening change in law; plaintiff makes much of the circumstance the trial court initially found a likelihood of plaintiff prevailing at the preliminary injunction stage, prior to the January 24, 2013 resolution.

---

**6** Former Civil Code section 1354 was renumbered to Civil Code section 5975 without change, effective January 1, 2014.

Plaintiff's argument might be more to the point if the trial court had awarded the entire amount of fees requested by defendants, dating to the inception of the case.**7**  But it did not.  Rather, the trial court exercised its discretion to limit the amount of fees and costs awarded to defendants to those amounts incurred in litigating the matter *after* the January 24, 2013 resolution.  Defendants only recovered those fees and costs, therefore, that were *not* arguably affected by an intervening change in the law; after the January 24, 2013 resolution, there were no further changes in the relevant law.  Defendants achieved their primary litigation objective, namely, the dismissal of plaintiff's suit without leave to amend, and plaintiff achieved none of his litigation objectives, ultimately obtaining none of the relief sought in any of the four variations of his complaint that he filed.  The trial court did not err in determining defendants to have prevailed on a practical level, and to be entitled to at least a portion of the fees and costs they requested.**8**

Plaintiff also objects that defendants did not submit any detailed time sheets in support of their motion for fees.  It is well established, however, that a defendant may carry its burden of establishing its entitlement to attorney fees by submitting a declaration

---

**7**  This observation should not be taken to express any opinion as to whether we would *accept* the argument in those circumstances.  Also, for the reasons discussed in this opinion, we do not accept plaintiff's assertion that he necessarily would have prevailed, had the January 24, 2013 resolution not changed the applicable law during the course of the litigation.

**8**  Defendants have not filed a cross-appeal with respect to the award of fees and costs.  We therefore do not address whether or not the trial court should have instead awarded the full amount requested by defendants.

13

from counsel instead of billing records or invoices.  (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 487-488.)

## III. DISPOSITION

The judgment and the order granting the motion for attorney fees are affirmed. Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

    HOLLENHORST      

Acting P. J.

We concur:

    MCKINSTER     

J.

    CODRINGTON     

J.